BRAXTON COUNTY COURT *v.* THE STATE OF WEST VIRGINIA *ex rel.* THE STATE TAX COMMISSIONERS.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF WEST VIRGINIA.

No. 124.   Submitted January 14, 1908.—Decided January 27, 1908.

Speaking generally, and subject to the rule that no State can set at naught the provisions of the National Constitution, the regulation of municipal corporations is peculiarly within state control, the legislature determining the taxing body, the taxing districts, and the limits of taxation.

Notwithstanding that plaintiff in error's charge of unconstitutionality of a state statute may not be frivolous, in order to give this court jurisdiction to review the action of the state court sustaining the statute the question must be raised in this court by one adversely affected by the decision and whose interest is personal and not of an official nature. *Smith, Auditor,* v. *Indiana,* 191 U. S. 138.

A county court of West Virginia has no personal interest in the amount of tax levy made by it which will give this court jurisdiction to review at its instance the decision of the highest court of that State determining that the levy is excessive, even though the basis of request for review is the ground that the reduction of the assessment leaves the county unable for lack of funds to fulfill the obligations of its contracts.

60 West Virginia, 339, affirmed.

SECTIONS 7 and 8, article 10, of the West Virginia constitution of 1872 prohibit the county authorities, except in certain specified cases, from levying taxes in excess of ninety-five cents per $100 valuation. In 1904 the valuation of property in Braxton County was $2,799,604. The state legislature, at

an extraordinary session in 1904 and the regular session of 1905, changed the statute law in respect to taxation, largely remodelling the entire tax system. One of the objects of such legislation was to secure a more correct valuation of property. In 1906, under this new legislation, the assessed value of the property in Braxton County was $10,195,301, nearly four times the amount of the assessment in 1904. In view of an expected increase in valuation the·legislature enacted, chapter 48 of the acts of 1905 (Code of West Va., 1906, § 29, chap. 39), by which it was provided that no county court should, in the year 1906, assess or levy taxes which should exceed by more than seven per cent the aggregate amount of taxes levied by it in the year 1904. The levy made in the county of Braxton in 1904 of ninety-five cents on the $100 valuation produced the sum of $26,596.23, subject, of course, to such minor re-ductions as might come from delinquencies and exonerations. Therefore, under the act of 1905, the amount which the county court could levy in 1906 was the $26,596.23 plus an addition of not to exceed seven per cent, or $1,861.73, making a total of $28,457.96. To raise this amount a levy of not to exceed twenty-eight cents on each $100 was sufficient. The county court, however, made a levy of sixty-five cents on every $100, and caused it to be entered upon the records of the court. Such levy of sixty-five cents would produce the sum of $66,269.45, more than double the amount which was authorized under the legislation of 1905. Thereupon the state tax commissioner and certain residents and taxpayers of Braxton County applied to the Supreme Court of the State for a mandamus to compel the county court to change that assessment to conform to the requirements of the act of 1905. The county court made answer and return to the alternative writ of mandamus, pleading that the amount necessary during the current fiscal year to pay the necessary expenses, discharge the county debts and liabilities payable during that year was at least $57,146, not including an amount for interest and sinking fund of certain railroad bonds, theretofore legally issued by the county.

In other words, it may be said, in a general way, that the defense of the county court was that the sum authorized to be levied by the act of 1905 was insufficient to meet the ordinary expenses of the county, pay the interest, and provide a sinking fund for outstanding bonds. It was pleaded specifically that at the time these railroad bonds were issued there was not only no restriction upon the power of the county court to levy taxes for payment of the principal and interest thereof, but, on the contrary, that the general statutory law in force required the county to levy a tax in amount sufficient to pay the annual interest and provide a sinking fund. It was contended that these provisions entered into and became a part of the contract with the bondholders, and that the restrictions made by the act of 1905 worked an impairment of the obligation of the contract, and hence it was in conflict with § 10 of Article I of the Federal Constitution.

The Supreme Court of Appeals issued the mandamus as prayed for, whereupon the defendants brought the case here on error. *State ex rel. Dillon* v. *County Court*, 60 W. Va. 339.

*Mr. George E. Price* for plaintiffs in error:

This case is not governed by the cases of *Clark* v. *Kansas City*, 176 U. S. 114; *Lampasas* v. *Bell*, 180 U. S. 276; *Wellington, Petitioner*, 16 Pick. 87, 96; *Smith, Auditor of Marion County*, v. *Indiana*, 191 U. S. 138, holding that the objection made to the constitutionality of an act must be by a party whose rights it does affect, and who has legal interest in defeating it.

The county court of Braxton County has a right to raise the question whether it was bound to obey the act of 1905 in this case. It is interested in this matter as a party to the contracts, the obligations of which are impaired by this statute; it is a corporation. See Code, chap. 36, §§ 1, 4, 16, 17 and 43.

The county court is a party to all contracts, debts and obligations of its county. It stands for the county. When bonds are issued they are made in its name and issued by it.

This was the case with the railroad bonds in question. By these bonds the county court expressly agreed to pay certain sums of money at certain times and in a certain way, and it certainly has a deep interest in seeing that it is not deprived of the power to carry out its agreement.

The people of the county, the taxpayers, are certainly parties to the contracts of the county. It is they who pay the county's debts and discharge its obligations. If after they have contracted a debt in their aggregate capacity as a county, a law is passed that impairs its obligations, they have as much right as the creditor to object to it and to test its validity in the courts. This must be done, if at all, in the name and by means of the county court, their representative. *Clark* v. *County Court*, 55 W. Va. 278, 285. While one or a few could bring such a suit, the burden should not be placed on one or a few which ought to be borne by all. And see *Board of Liquidation* v. *Louisiana*, 179 U. S. 622.

The obligation of a contract consists in its binding force on the party who made it. This depends on the laws in force when it is made. These laws are necessarily referred to in all contracts as forming part of them as the measure of the obligation to perform them and as creating the right acquired by the other parties to compel performance. The obligation does not inhere and subsist in the contract *proprio vigore*, but in the law applicable to the contract. *Ogden* v. *Saunders*, 12 Wheat. 213, 302; *McCracken* v. *Hayward*, 2 How. 608; *Goodale* v. *Fennell*, 27 Ohio St. 426; *S. C.*, 22 Am. Rep. 221; *United States* v. *Judges*, 32 Fed. Rep. 715; *State* v. *New Orleans*, 37 La. Ann. 17; *Von Huffman* v. *City of Quincy*, 4 Wall. 535, 549; *United States* v. *Mayor and Administrators of the City of New Orleans*, 103 U. S. 358; *Butz* v. *City of Muscatine*, 8 Wall. 575; *White* v. *Hart*, 13 Wall. 647; *Walker* v. *Whitehead*, 16 Wall. 318; *City of Galena* v. *Amy*, 5 Wall. 709; *Riggs* v. *Johnson Co.*, 6 Wall. 194; *Mobile* v. *Watson*, 116 U. S. 305; *Curran* v. *State of Arkansas*, 15 How. 304; *Planters' Bank* v. *Shark*, 6 How. 301; *Green* v. *Biddle*, 8 Wheat. 1.

The constitutional provisions and the laws which were in force in West Virginia when the railroad bonds of Braxton County were issued, not only authorized, but required the county court to provide for the collection of a direct annual tax sufficient to pay annually the interest on said bonds, and the principal thereof within and not exceeding thirty-four years. Const. of West Virginia, Article 10, § 8. The law governing the county court in such a case is § 59, c. 54 of the Code.

*Mr. W. Mollohan* for defendants in error:

The county court of Braxton County under the constitution and statute law of the State of West Virginia, as construed by the highest court of that State, is a mere fiscal or administrative board for the management of county affairs and has no personal or direct interest in claims against the county owned or held by third persons, such as will authorize it to prosecute a writ of error in this case, nor under such constitution, statutes and decisions has it the right to stand in judgment for such third parties and present for decision the question whether or not any given statute violates their contract rights against the county.

Even if this court should be of opinion that it is not bound to accept the decision of the Supreme Court of Appeals of West Virginia as to the powers of the county court to stand in judgment for its creditors and present for decision the question of alleged impairment of creditors' contracts, yet under the decisions of this court the county court of Braxton County had no such interest as would enable it to prosecute a writ of error to this court. *Henderson* v. *Tennessee,* 10 How. 311; *Lampasas* v. *Bell,* 180 U. S. 276; *Giles* v. *Little,* 134 U. S. 635; *Smith, Auditor,* v. *Indiana,* 191 U. S. 138; *Tyler* v. *Registration Court Judges,* 179 U. S. 405; *Clark* v. *Kansas City,* 176 U. S. 114; *Turpin* v. *Lemon,* 187 U. S. 51; *Ludeling* v. *Chaffee,* 143 U. S. 301; *Caffrey* v. *Oklahoma,* 177 U. S. 346.

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

Speaking generally, the regulation of municipal corporations is a matter peculiarly within the domain of state control. The taxing body, the taxing district and the limits of taxation are determinable by the legislature of the State. *Kelly* v. *Pittsburgh,* 104 U. S. 78; *Forsyth* v. *Hammond,* 166 U. S. 506, and cases cited in the opinion; *Williams* v. *Eggleston,* 170 U. S. 304, 310; 1 Dillon on Municipal Corporations (4th ed., p. 52), and following. True, the legislature may sometimes, by restrictive legislation in respect to taxes, seek to prevent the payment by a municipality of its contract obligations, and in such a case the courts will enforce the protective clauses of the Federal Constitution against any state legislation impairing the obligation of a contract. In other words, no State can in respect to any matter set at naught the paramount provisions of the National Constitution.

Again, that the act of the State is charged to be in violation of the National Constitution, and that the charge is not frivolous, does not always give this court jurisdiction to review the judgment of a state court. The party raising the question of constitutionality and invoking our jurisdiction must be interested in and affected adversely by the decision of the state court sustaining the act, and the interest must be of a personal and not of an official nature. *Clark* v. *Kansas City,* 176 U. S. 114, 118; *Lampasas* v. *Bell,* 180 U. S. 276, 283; *Smith* v. *Indiana,* 191 U. S. 138, 148. In the latter case suit was brought in the state court against a county auditor to test the constitutionality of the exemption law of Indiana, which was claimed to be in conflict with the Federal Constitution. The decision of the state court having been in favor of the act, the auditor brought the case here. Mr. Justice Brown, delivering the opinion of the court, cited the following cases: *Tyler* v. *Registration Court Judges,* 179 U. S. 405; *Clark* v. *Kansas City,* 176 U. S. 114; *Turpin* v. *Lemon,* 187 U. S. 51;

*Lampasas* v. *Bell*, 180 U. S. 276; *Ludeling* v. *Chaffee*, 143 U. S. 301; *Giles* v. *Little*, 134 U. S. 645; and said (191 U. S. 148):

"These authorities control the present case. It is evident that· the auditor had no personal interest in the litigation. He had certain duties as a public officer to perform. The performance· of those duties was of no personal benefit to him. Their non-performance was equally so. He neither gained nor lost anything by invoking the advice of the Supreme Court as to the·proper action he should take. He was testing the constitutionality of the law purely in the interest of third persons, viz., the taxpayers, and in· this particular case the case is analogous to that of *Caffrey* v. *Oklahoma*, 177 U. S. 346. We think the interest of an appellant in this court should be a personal and not an official interest, and that the defendant, having sought the advice of the courts of his own State in his official capacity, should be content to abide by their decisions."

These decisions control this case and compel a dismissal of the writ of error, and

*It is so ordered.*