CHRYSLER CORP. v. UNEMPLOYMENT COMPENSATION
COMMISSION.

1. UNEMPLOYMENT COMPENSATION—PAYMENT OF BENEFITS PENDING
APPEAL IN COURT—DUE PROCESS.

Provision of unemployment compensation act stating that bene-
fits thereunder finally allowed by referee or appeal board
should be paid regardless of any appeal from decision of
administrative appeal board established under the act if con-
strued as requiring payment of benefits pending judicial
determination as to disqualification of claimants for benefits
because of direct interest in a labor dispute would render
administrative action superior to recognized judicial power
and constitute a denial of due process (U. S. Const. am. 14,
§ 1; Act No. 1, §§ 34, 38, Pub. Acts 1936 [Ex. Sess.], as
amended by Act No. 347, Pub. Acts 1937, and Act No. 324,
Pub. Acts 1939).

2. SAME—EMPLOYERS—PARTIES—REVIEW OF ELIGIBILITY OF CLAIM-
ANTS.

The employer who contributes to the unemployment compensation
fund has an interest in its proper distribution and a duty to
see that the purpose and full integrity of the fund is pre-
served, hence is a proper party to proceeding to review right
of claimants to awards (Act No. 1, § 34, Pub. Acts 1936
[Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937,
and Act No. 324, Pub. Acts 1939).

3. SAME—EMPLOYER'S RELATION TO FUND—PARTIES.

An employer who is required to contribute to the unemployment
compensation fund, with respect to his right and duty to have
only lawful use made of such fund, is in substantially the
same position as the ordinary taxpayer relative to public
moneys acquired by taxation being used for lawful purposes
only (Act No. 1, § 34, Pub. Acts 1936 [Ex. Sess.], as amended
by Act No. 347, Pub. Acts 1937, and Act No. 324, Pub. Acts
1939).

4. CONSTITUTIONAL LAW—DUE PROCESS—DEFINITION.

Due process of law is law in its regular course of administration
through the courts of justice.

5. SAME—PERFORMANCE OF JUDICIAL FUNCTIONS BY ADMINISTRATIVE BOARDS—DUE PROCESS.

An attempt by the legislature to authorize the performance of a judicial function by an administrative board would result in depriving the persons affected by the orders of such board of their fundamental right to a hearing by a judicial tribunal and would thus not constitute due process of law.

6. UNEMPLOYMENT COMPENSATION—JUDICIAL REVIEW—BENEFITS DURING APPEAL.

Under the unemployment compensation act, purpose of judicial review of final determination by officers administering the act as to disqualification of claimants for benefits because of direct interest in labor dispute is not limited to ascertainment of whether or not employer's experience record should be charged with payment sought to be required during such appeal but such purpose is in addition to that of protecting the unemployment compensation fund, provided by the employers, from maladministration or unlawful dissipation (Act No. 1, § 34, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937, and Act No. 324, Pub. Acts 1939).

7. OFFICERS—ADMINISTRATION OF PUBLIC FUNDS—COURTS.

Public officers entrusted with the administration of public funds are amenable to judicial process.

8. UNEMPLOYMENT COMPENSATION—DOUBLE AFFIRMATION—PAYMENT OF BENEFITS PENDING JUDICIAL REVIEW.

Compliance with so-called double affirmation provision of unemployment compensation act requiring payment of benefits to claimants pending judicial review of final determination of officers charged with administration of the statute requiring payment of benefits would nullify provision of the act lodging right of review of both questions of fact and of law in the circuit court and appeal therefrom as in other cases of appeal from circuit court and violate constitutional provision placing appellate jurisdiction in circuit courts over inferior courts and tribunals (Const. 1908, art. 7, § 10; Act No. 1, §§ 34, 38, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937, and Act No. 324, Pub. Acts 1939).

9. SAME—REDETERMINATION BY APPEAL BOARD—GREAT WEIGHT OF EVIDENCE.

Redetermination of unemployment compensation appeal board that unemployment of 22,000 claimants for benefits was due to grievances arising within and confined to certain departments of employer's main plant and because of disciplinary

action taken by the employer in discharging and laying off 124 employees of such plant and was not due to labor dispute between employer and common bargaining agent of employees in the nine coordinated plants in which present claimants were directly interested and which had been found to be the basis for denying unemployment compensation to these same claimants in a previous case on appeal in Supreme Court *held*, against the great weight of the evidence under record presented on this second appeal (Act No. 1, §§ 29, 34, 38, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937, and Act No. 324, Pub. Acts 1939).

10. COSTS—ADMINISTRATION OF UNEMPLOYMENT COMPENSATION ACT —APPEAL.

No costs are awarded on appeal in proceedings arising out of the administration of the unemployment compensation act in which decision of circuit court, reversing awards made by appeal board, is affirmed (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937, and Act No. 324, Pub. Acts 1939).

Appeal from Ingham; Carr (Leland W.), J. Submitted January 14, 1942. (Docket No. 48, Calendar No. 41,861.) Decided April 6, 1942. Application for certiorari denied by Supreme Court of the United States October 12, 1942.

Certiorari by Chrysler Corporation to review awards of unemployment compensation by Appeal Board of Michigan Unemployment Compensation Commission to certain claimants. Judgment reversing awards. Certain claimants appeal. Affirmed.

*Maurice Sugar* and *Ernest Goodman* (*Morton A. Eden,* of counsel), for appellants.

*Bulkley, Ledyard, Dickinson & Wright* and *Thomas F. Chawke* (*Harry C. Bulkley, Thomas F. Chawke,* and *John G. Garlinghouse,* on the brief), for Chrysler Corporation.

NORTH, J. This is an appeal by certain employees of the Chrysler Corporation from the final decision in the circuit court of Ingham county denying such

employees unemployment compensation. Prior to the proceedings in the circuit court of Ingham county a large number of Chrysler Corporation's employees had submitted their claims for unemployment compensation to the Michigan unemployment compensation commission, hereinafter referred to as the commission. These proceedings were taken under Act No. 1, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 347, Pub. Acts 1937, and Act No. 324, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 8485-41 *et seq.*, Stat. Ann. 1940 Cum. Supp. § 17.501 *et seq.*). Upon final determination of the commission by its board of appeal it affirmed in all material aspects the conclusion of the referee and held that the claimants were entitled to compensation. . The Chrysler Corporation took an appeal to the circuit court of Ingham county. In that court claimants were denied compensation. Approximately 22,000 of such claimants for whom counsel for the UAW-CIO appeared have appealed to this Court. Numerous other claimants represented by other counsel have not appealed.

Primarily decision in the circuit court was based upon the conclusion of the circuit judge that all questions presented on this appeal to the circuit court were decided adversely to the contentions of claimants and controlled by the recent decision of this Court in *Chrysler Corp.* v. *Smith,* 297 Mich. 438 (135 A. L. R. 900). Except in one particular hereinafter noted, it is sufficiently accurate for decision of this appeal to say that the claims of the employees now before the Court were presented to the commission and to the circuit court of Ingham county on substantially the same record that was màde and relied upon in *Chrysler Corp.* v. *Smith, supra;* and the factual background of the instant case sufficiently appears therein.

Notwithstanding the contention of appellants' counsel to the contrary, we think it plainly appears from our opinion in *Chrysler Corp.* v. *Smith,* above cited, that we there, at least by necessary implication, if not expressly, held that the so-called double affirmation clause contained in section 34 of the unemployment compensation act (Comp. Laws Supp. 1940, § 8485-74, Stat. Ann. 1940 Cum. Supp. § 17.536) is unconstitutional as there sought to be applied by claimants. That part of the act reads:

"Provided, that if the final decision of a referee affirms the initial or an amended determination, or the appeal board affirms the final decision of a referee, allowing benefits, such benefits shall be paid regardless of any appeal which may thereafter be taken, but if such decision is finally reversed, no employer's experience record shall be charged with benefits so paid."

In *Chrysler Corp.* v. *Smith, supra,* 453, Mr. Justice WIEST, in writing for the Court, said of this provision:

"This, if held applicable in the instance at bar, would render administrative action superior to recognized judicial power in the premises and constitute the provisions relative to appeal and court procedure a nullity. If construed, as applicable in this instance, it would render due process of law, expressly recognized and provided for in the act, nugatory and a senseless gesture."

Mr. Justice BOYLES in a concurring opinion referring to this same contention of the claimants said (p. 477):

"The effect of such a construction would render payments a moot question pending court decision. Section 34 cannot be construed to deprive this court of jurisdiction to review questions of law and

(within proper limits) questions of fact, especially where a construction of the meaning of the act is involved."

While it scarcely seems necessary, it may be noted that the fundamental reason for holding the double affirmation provision invalid, in the aspect now under consideration, is that otherwise the controverted issue of claimants' right to be paid compensation would in effect be finally decided and the compensation paid without affording an adverse party any opportunity whatever to have obtained a *judicial* determination of the rights of the respective parties; and thereby the party contesting the employees' claim to compensation would be deprived of the right to due process which is afforded by both the State Constitution and the Federal Constitution whenever the controversy involves property rights. That the Chrysler Corporation has a property right in the unemployment compensation fund and in its just administration was also passed upon by Mr. Justice Wiest's opinion in *Chrysler Corp.* v. *Smith, supra,* 453, wherein it was said:

"Claimants question the right of the Chrysler Corporation to appear and contest their right to awards. This requires but short answer. As a contributor to the fund, having an interest in its proper disbursement, it was the right of the corporation, if not its duty, to see that the purpose and full integrity of the fund was preserved."

In respect of his right and duty to have only lawful use made of the unemployment fund, the assessed employer is in substantially the same position as the ordinary taxpayer relative to public moneys acquired by taxation being used for lawful purposes only. *Thomas* v. *Wayne County Supervisors,* 214 Mich. 72; *Savidge* v. *Village of Spring Lake,* 112 Mich. 91, wherein we said:

"It is well settled in this State that a taxpayer in the situation of the complainant is entitled to maintain a suit to restrain the illegal action of a municipality in the expenditure of money."

Regardless of what useful and lawful purpose the double affirmation clause of section 34 of the unemployment compensation act might serve under other circumstances, as claimants wish to have it applied in the instant case it is unconstitutional in that if so applied it would deprive plaintiff of due process of law. What constitutes due process of law, when property rights are involved, is not a new question in this jurisdiction.

"An approved definition of due process of law is law in its regular course of administration through the courts of justice. See *Weimer* v. *Bunbury*, 30 Mich. 201. * * *

"Strictly speaking, with regard to judicial questions and under our present Constitution: 'Unless there is a tribunal of a judicial character, there cannot be due process of law under the 14th Amendment to the Federal Constitution, nor within the meaning of State Constitutions when justly construed.' 1 Elliott on Roads and Streets (4th Ed.), § 315, note 16.

" 'A day in court is a matter of right in judicial proceedings.' Mr. Justice Cooley in *Weimer* v. *Bunbury, supra.*

"Due process of law, 'when used in relation to those (proceedings) of a *judicial* character, it is evidently, and has been so universally held, intended to secure to the citizen the right to a trial according to the forms of law of the questions of his liability and responsibility, before his person or his property shall be condemned. Judicial action is in such cases imperatively required, and "implies and includes *actor, reus, judex*—regular allegations, opportunity to answer, and trial according to some settled course of judicial proceedings." ' *Parsons* v. *Russell*, 11

Mich. 113 (83 Am. Dec. 728). See (also) 20 C. J. p. 886.

" 'Thus an attempt by the legislature to authorize the performance of a judicial function by an administrative board would result in depriving the persons affected by the orders of such board of their fundamental right to a hearing by a judicial tribunal and would thus not constitute due process of law.' 2 Nichols on Eminent Domain (2d Ed.), § 329." *Hendershott* v. *Rogers,* 237 Mich. 338, 348.

We are not in accord with appellants' contention, as stated in their brief, that following double affirmation: "Subsequent appeals    *    *    *    under the act were *merely* for the purpose of determining whether the experience record of the Chrysler Corporation should be charged with payments so made." The act does not expressly so provide, and it should not be so construed. Instead of the right of such appeals being granted solely or "merely" for the purpose of enabling the Chrysler Corporation to have determination of whether its experience record should be charged with the payments made, we think this is but another reason for granting the right of subsequent appeals in addition to that of protecting the compensation fund provided by the Chrysler Corporation and others from maladministration or unlawful dissipation. . . .

In reaching our decision on this phase of the instant case we are mindful of the decision rendered February 7, 1941, by a divided court in *Abelleira* v. *District Court of Appeal of the State of California,* 17 Cal. (2d) 280 (109 Pac. [2d.] 942, 132 A. L. R. 715). The majority opinion of the California court sustains the double affirmation clause, but for reasons of a humanitarian character and with very limited consideration of its compliance with constitutional requirements. We consider the reasoning

of the dissenting opinion more persuasive. The writer of that opinion said (p. 309):

"The claimants have taken the position that the decisions of the commission allowing and directing the payment of benefits are beyond judicial review. * * * It cannot be true that this is the attitude of the members of the commission, who are public officers acting as trustees of a public fund which now contains an enormous amount of money collected from the employers and employees of the State for a specific purpose, namely, for the relief of employees who have been subjected to involuntary unemployment and who are eligible under the law to receive benefits. If the commission persists in payment to those who are ineligible to receive benefits, * * *. approximately a half million dollars will be unlawfully paid out of a fund. * * *

"To hold that a commission set up by a statute of this State with the highly important and responsible duties of the employment commission is not amenable to judicial process * * * would be to constitute the commission an autocratic body whose functioning is uncontrolled by any consideration except its own whim and caprice. Such of course is not the law of this State, nor of any other jurisdiction, State or Federal."

Further, it may be noted that section 38 of the Michigan unemployment compensation statute (Comp. Laws Supp. 1940, § 8485-78, Stat. Ann. 1940 Cum. Supp. § 17.540) provides for a review of both questions of fact and of law by the circuit court, and "An appeal may be had from the decision of said circuit court in the same manner as provided by the laws of this State with respect to appeals from circuit courts." Article 7, § 10, of the Constitution of this State (1908), in part provides: "Circuit courts shall have * * -* appellate jurisdiction from all inferior courts and tribunals and a supervisory control of the same." To sustain appellants' contention

as to the effect of the double affirmation clause of the act would be to deprive the courts of any effective review or supervisory control of awards of compensation to applicants therefor regardless of whether or not they were entitled to same under the terms of the act. So construed the double affirmation provision in the statute would be violative of the above-quoted constitutional provision."*

Appellants contend the circuit judge was in error in holding that their rights in the instant case are controlled by our former decision in *Chrysler Corp.* v. *Smith, supra.* It is incident to this phase of the case that appellants assert there is a controlling difference in the factual aspects of the instant case and the *Chrysler-Smith Case.* Appellants point out that in the latter case our decision was on the assumption that: "A labor dispute that affects the wages, hours of work and general conditions of employment causes all employees concerned to be directly interested," and that such was the character of the labor dispute which led to the unemployment of the claimants in the *Chrysler-Smith Case.* But as to the instant case, appellants stress the fact that after the *Chrysler-Smith Case* was appealed to the circuit court there was a redetermination by the department of this factual aspect of the case; and that in the case at bar on such redetermination the appeal board found:

"(1) 'The stoppage of work at the Dodge main plant was not caused by the contract negotiations between the Corporation and the UAW-CIO, but by grievances arising within and confined to certain departments of the Dodge main plant and because of the disciplinary action taken by the corporation in discharging and laying off 124 employees of this plant.'

* Act No. 364, Pub. Acts 1941, eliminates the "double affirmation" provision.

"(2) 'The UAW-CIO, alleging that the Corporation was using armed guards in and about the Dodge truck plant, inaugurated a picket line at this plant on October 31, 1939, causing a complete stoppage of work. Without attempting to pass on the merits of this controversy, it is clear that the labor dispute which started at this plant on October 31, 1939, was not caused by the contract negotiations.''

In this connection it is stated in appellants' brief:

"The effect of the foregoing is that the application of the principles of law laid down by this Court in the *Chrysler* v. *Smith Case* do not serve to disqualify appellants because the facts before the Court are entirely different from the facts before the Court in the preceding case.''

Even if it were conceded that this contention of appellants were sound in law, still under the record in this case we are of the opinion that the determination of the circuit court in this respect must be affirmed on the ground that the determination of the board of appeals was contrary to the great weight of evidence which discloses the true facts in the case. The character and scope of review by the courts in this proceeding is defined by section 38 of the act. In part it reads:

"Review of questions of fact and law by court. The findings of fact made by the appeal board acting within its powers if supported by the great weight of the evidence, shall, in the absence of fraud, be conclusive, but the circuit court ' * * * shall have power to review questions of fact and law on the record made before the appeal board involved in any such final decision or determination, but said court may reverse such decision of said appeal board upon a question of fact only if it finds that said decision of the appeal board is contrary to the great weight of the evidence. * * * An appeal may be had from the decision of said circuit court in the same

manner as provided by the laws of this State with respect to appeals from circuit courts."

The above-quoted finding of facts by the appeal board is not a full and fair statement of the facts as we find them conclusively disclosed by this record. Instead, the only fair conclusion which can be reached is that a "slow-down" in production was undertaken by the employees or certain of them in the Dodge main plant which in many respects was the key plant of the entire Chrysler establishment. That particular plant supplied parts or assemblies to other of the Chrysler plants and was commonly referred to as a feeder or a supplier of parts for the other manufacturing units of the corporation. Practically all of the corporation's manufacturing operations carried on in its various plants are functionally integrated and highly synchronized with the production of the Dodge main plant. A "slow-down" of production in the Dodge main plant necessarily affected the working conditions throughout the entire establishment. It was concerning this that the labor troubles arose; and it was incident to this and on account of certain disciplinary measures resorted to on the part of the Chrysler Corporation a strike was called. There can be no question that the attempted slow-down of production was aimed at affecting the labor conditions in all other Chrysler plants in like manner. This, we think, brings appellants' case squarely within section 29 of the act (Comp. Laws Supp. 1940, § 8485-69, Stat. Ann. 1940 Cum. Supp. § 17.531) which defines the circumstances under which an employee is disqualified from receiving benefits under the act. Subdivision (d) of this section provides that an employee shall not be entitled to benefits for any week with respect to which his unemployment is due to a labor dispute which is actively in progress in the establishment in which he is or was employed. All of these appellants along with

the employees in the Dodge main plant were represented by a common agent in their labor relations with the Chrysler Corporation; and under this record it cannot be said that any of these appellants have established "that he is (was) not directly involved in such dispute;" or that he came within the other exceptions noted in the statute.

The record is convincing that the facts and circumstances above noted and the labor trouble incident thereto were all intimately related with the demand of the UAW-CIO, as the bargaining agent for all of the Chrysler employees, that the Corporation enter into a new contract having to do with wages, working conditions, rate of production, et cetera, and in which contract all of the employees of the Chrysler Corporation were interested. Further details of this phase of the case now under consideration appear in the opinion of Justice WIEST in *Chrysler Corp.* v. *Smith, supra;* and on this phase of the case the record now before us is the same, with the exception of the redetermination of facts by the appeal board, as was herein the former case. The record in both cases quite conclusively supports the following statement in Justice WIEST's opinion (p. 452):

"The labor dispute involved new contract provisions in which claimants were directly interested, and the stoppage of work and the calling of a strike in the main plant were well calculated to bring about a new contract of employment of direct interest to all claimants."

We are satisfied that the circuit judge was correct in holding:

"It must be said that the claimants and other employees of plaintiff, acting through their bargaining agency, indicated that they were 'directly interested' in this phase of the matters in dispute.

"Whether the dispute originally arose out of negotiations for a contract, or whether other differences of opinion preceded such negotiations is, of course, not conclusive. Various matters referred to in the test case, or at least most of them, were involved in the contract negotiations in which the employees were represented by their bargaining agency. It seems to me that the conclusion is unavoidable that all employees were 'interested' within the meaning of the statute. * * * I think it must further be said that if the majority of the members of the appeal board have found (the finding was concurred in by two of the three members of the board) that the subject matter of the labor dispute did not affect the claimants, and all of them, interested in the present proceeding, such finding is contrary to the great weight of the evidence."

Because of the importance of decision herein we have given quite detailed consideration to the material claims of appellants rather than to have summarily disposed of this appeal by holding all controlling questions now presented were passed upon in *Chrysler Corp.* v. *Smith, supra,* adversely to appellants, as was held by the circuit judge and in part made the ground of his decision. The judgment entered in the circuit court is affirmed. No costs are awarded on this appeal.

CHANDLER, C. J., and BOYLES, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.